M. E. LUCAS v. J. E. THOMPSON ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
NO. 1 OF ALLEGHENY COUNTY.

Argued October 26, 1891—Decided January 4, 1892.
[To be reported.]

(a) The plaintiff, as administratrix of a deceased member of an Odd Fel-
lows lodge, brought suit against the lodge to recover weekly sick-
benefits for a number of years prior to his death. The by-laws of the
lodge provided that benefits should not be allowed to members residing
within visiting limits of the lodge, until after they had been reported
sick or disabled, to the lodge or to the relief committee.

(b) By the laws of the order, "a brother who, when sick or disabled,
neglects or refuses to make application for benefits, as required by the
by-laws of his lodge, unless prevented by unavoidable circumstances,
forfeits his claim thereto." The deceased resided within visiting limits
of the lodge to which he belonged. During the time for which benefits
were claimed he was totally disabled by paralysis:

1. It appearing that the deceased, when visited by the relief committee
several years before his death, declined to be reported as sick, declar-
ing that he was not entitled to benefits, and that he never presented a
claim for the benefits during his lifetime, the plaintiff was not entitled
to recover. The constitution and laws of the order, binding upon him
while living, were binding also upon his administratrix.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 14 October Term 1891, Sup Ct.; court below, No. 568
December Term 1889, C. P. No. 1, in Equity.

On November 7, 1883, Martha E. Lucas, administratrix of
the estate of William F. Caldwell, deceased, filed a bill in
equity against John E. Thompson and the officers and mem-
bers of Mechanics Lodge, No. 9, Independent Order of Odd
Fellows of the State of Pennsylvania, praying for discovery of
the financial condition of said lodge; for a decree for the pay-
ment to the plaintiff of certain weekly benefits averred to be
due and owing to the estate of said William F. Caldwell, de-
ceased, and for general relief.

The bill having been answered and issue joined, the cause

was referred to *Mr. D. F. Patterson*, as examiner and master, who afterwards reported in substance the following

### FINDINGS OF FACT:

The Independent Order of Odd Fellows of the State of Pennsylvania, is an unincorporated beneficial association, the principal object of which is to provide a fund, by the collection of weekly dues from its members, for the purpose of affording weekly financial aid to sick and disabled members of good standing in the order.

Mechanics Lodge, No. 9, I. O. of O. F., is a subordinate lodge, organized by virtue of a warrant issued from the Grand Lodge of the State of Pennsylvania.

Article VII. of the constitution provides that every member of the lodge, " who, through sickness, or disability arising from an injury, is unable to follow his usual business, or some other occupation whereby he may earn a livelihood, or a sum equal to the weekly benefits, shall be entitled to such sum as weekly benefits (not less than one dollar per week) as the by-laws shall specify ; " provided, that no member shall be entitled to benefits whose disability is local and apparently permanent, but whose general health does not disqualify him from following some occupation, or whose sickness or disability has been caused by intemperance or immoral conduct, or whose disability results from any infirmity to which he was subject previous to, and concealed at the time of his admission to membership, or who is over thirteen weeks in arrears for dues. Section 7 of the same article provides that " in case of the death of a member in good standing, and entitled to weekly benefits, a funeral fund of not less than thirty dollars, as the by-laws shall specify, shall be paid without delay," etc.

Article IV. of the by-laws specifies the amount of weekly benefits to which members of different degrees are entitled, and fixes the funeral benefit at one hundred dollars. It provides that " benefits shall not be allowed to members residing within visiting limits of the lodge, until after they have been reported sick or disabled to the lodge or the relief committee." Section 9 of article VII. of the constitution provides that " members residing beyond the visiting limits of the relief committee, claiming benefits, shall present to the lodge satisfactory evidence that they are entitled thereto ; " and § 5 of

article IV. of the by-laws prescribes the requirements of the lodge with respect to such evidence.

Neither the constitution nor the by-laws of the order contain any provision requiring a member residing within visiting limits of the lodge, to make application to the lodge for benefits claimed by him, or to furnish evidence of his sickness or disability; * but article V. of the by-laws provides that the noble grand, vice-grand, and assistant secretary shall constitute the relief committee, whose duty it shall be to visit any member residing within visiting limits, within forty-eight hours after notice of his sickness or disability, and to continue to visit him once a week, and as much more frequently as his case may require and the lodge direct, until he is discharged; and if the relief committee have any doubt about the sickness or disability of such member, they may employ a physician to examine him, and report the result thereof to the lodge.

The master found, further, in substance : William F. Caldwell became a member of Mechanics Lodge on February 22, 1868, and continued to be a member thereof, in good standing, until the date of his death, May 7, 1889, his dues and assessments being paid with satisfactory regularity. In 1872, he became afflicted with locomotor ataxia, which paralyzed him, particularly as to his lower limbs, and totally disqualified him for following any occupation. Such incapacity continued until his death; and after 1872, he spent his life, seated in a rolling chair or lying in bed. On March 23, 1872, he was reported sick to the lodge, and thereafter until March, 1874, he received weekly sick benefits. In March, 1874, the lodge advanced to him the sum of two hundred dollars, which was expended in fitting up and stocking a little cigar and confectionery store, thereafter carried on in his name. In the course of about two

---

* The defendants put in evidence certain sections of the Pennsylvania Digest of Odd Fellowship, among them § 175, reading as follows :

" § 175. A brother who, when sick or disabled, neglects or refuses to make application for benefits as required by the by-laws of his lodge, unless prevented by unavoidable circumstances, forfeits his claim thereto."

It was stated in the paper-book of appellee that " the sections of the Pennsylvania Digest cited are simply decisions of the grand master or principal officer of the order of the state, on special cases, for the year in which he serves, approved by the committee of the grand lodge appointed by him, and are as conflicting as they are numerous."

years, the stock in the store was run down until it was of little value, when his sister took charge of it, replenishing the stock with money raised by herself, and subsequently enlarging the business, which she carried on in the name of her brother.

There was no satisfactory evidence of any contract between Caldwell and the lodge for the release of weekly benefits in consideration of the two hundred dollars advanced in setting up the store. The transaction was an experiment, designed for the mutual advantage of Caldwell and the lodge, attended with an indefinite understanding that, if he succeeded with the store in accordance with his hopes, he should not claim the weekly benefits. From the date when the store was established until his death, Caldwell never claimed or demanded the payment of sick benefits from the lodge, although he continued upon the sick list and under the care of the relief committee until June 27, 1874, when at his own request he was discharged from their care.

On September 12, 1885, W. F. Caldwell was reported sick to the lodge, and when visited by members of the relief committee, in pursuance of said report, he declared to them he was not a beneficiary of the lodge, and that he did not desire the relief committee to visit him. Upon his declarations being reported to the lodge, his name was stricken from the sick list, at the meeting held September 19, 1885. On November 13, 1886, he was again reported sick to the lodge, and when visited by members of the relief committee, in pursuance of said report, he again declared that he was not a beneficiary of the lodge, that he did not desire the relief committee to visit him, and that it was his desire to be reported to the lodge as well. Upon his declarations being reported to the lodge, his name was sticken from the sick list at the next meeting, held November 30, 1886.

And further, in substance : On each of the dates last mentioned, as well as prior thereto, and afterwards until the date of his death, Caldwell was totally unable to follow any occupation or to earn a livelihood ; and that fact was known to the relief committee who visited him on said dates, as well as to several other members of the lodge. There was no evidence that after November 13, 1886, he ever declined to receive benefits, or made any declaration that he was not a beneficiary, or

that he did not desire the relief committee to visit him. Upon his death, the funeral benefit of one hundred dollars, provided for by the constitution and by-laws, was paid by the lodge to his sister, Mrs. Lucas, who subsequently became his administratrix and is the plaintiff.

After his death, the plaintiff having given notice to the lodge that as administratrix she claimed benefits at the rate of six dollars per week from March 14, 1874, to May 7, 1889, and would seek relief in the courts unless the claim was honored, the lodge notified her that a commissioner had been appointed, under § 10, article VII. of the constitution, to take testimony respecting said claim, and invited her to produce any she might have. The section referred to provided that " should any person feel aggrieved at the action of this lodge for failing to pay benefits that are claimed to be due, such person shall give the lodge notice thereof within thirty days of any such action," whereupon a commissioner should be appointed to take down fully the testimony of all witnesses and report the same to the lodge ; that "the aggrieved party shall be notified that the subject will be considered at the next meeting of the lodge, at which time the lodge will consider it, when all the evidence in the case shall be read, and the claim be finally determined." Subsequent sections provided and regulated an appeal to the grand lodge, in case any such claim for benefits should be rejected in whole or in part. It did not appear that any testimony was ever taken or proceedings had, before the commissioner named in the said notice to the plaintiff, or that the commissioner ever fixed a time for a hearing.

On March 3, 1890, the Mechanics lodge had funds invested to the amount of $6,069.07, in addition to a small sum then in the treasury.

### CONCLUSIONS OF LAW :

Upon the facts so found, the master reported conclusions of law to the effect, in substance, that the purpose of the by-law requiring that members should be reported sick or disabled to the lodge or visiting committee, before benefits should be payable, was to inform the lodge, so that it might ascertain the con dition of the ailing member and discharge its duty toward him , and if his condition was otherwise known to the lodge, the obligation to pay benefits would arise without such report; that

Master's Report.

a member entitled to benefits might allow them to accumulate without forfeiting his right to claim them, and to relieve the lodge from the payment of accumulated benefits which the member was entitled to receive weekly, some unequivocal act indicating an intelligent purpose to relinquish the claim, or some substitute accepted in lieu of the benefits, must be shown, a mere failure to demand payment not being a legal release of the claim; that the indebtedness of a lodge for weekly benefits, when once created, continued until paid or relinquished, but was subject to the statute of limitations, and hence any claim for benefits anterior to November 7, 1883, must be rejected in the present case; that the declarations made by the decedent to the visiting committee on September 12, 1885, and November 13, 1886, were tantamount to a relinquishment by him of all claim to benefits that had accrued and accumulated prior to November 13, 1886, but could have no operation on benefits not then accrued, and hence not then the subject matter of tender or release; and there was nothing in the facts that could be construed into a legal release or abandonment of the right to recover benefits subsequent to that date; that the action of the lodge in paying the funeral benefit at Caldwell's death, indicated that it did not hold itself released from the obligation to pay sick benefits by the transaction in 1874, as the funeral benefit was payable only " in case of the death of a member in good standing and entitled to weekly benefits; " that the provisions of article VII. of the constitution of the lodge, and the appointment of a commissioner thereunder, afforded no defence, as the lodge had never taken action on the plaintiff's claim and the occasion for the appointment of a commissioner never arose, for the operation of these provisions was limited to controversies between the lodge and its living members, and, in any event, they could not operate to oust the jurisdiction of the courts; citing Bacon on Benef. Societies, 113; Insurance Co. v. Morse, 20 Wall. 445; Mentz v. Insurance Co., 79 Pa. 478; Wood v. Humphrey, 114 Mass. 185; Bauer v. Sampson Lodge, 102 Ind. 262; and that the suit was in proper form and against the proper defendants, citing Stevick on Unincorporated Ass'ns, § 38. The master therefore recommended a decree that Mechanics Lodge No. 9, I. O. O. F. of Pennsylvania, pay out of its funds to the plaintiff the sum of $774, with interest from May 7, 1889, and also pay the costs of this suit.

—Exceptions to the report of the master filed by the defendants were overruled by him and afterwards renewed before the court, alleging that the master erred:

1. In recommending a decree in favor of plaintiff.[1]

2. In sustaining the jurisdiction of a court of equity in this case.[2]

3. In holding that any court could take jurisdiction of this case, before all the remedies provided by the laws of the order were exhausted, and in not recommending the dismissal of the bill.[3]

4. In holding that an administratrix could maintain a suit for the recovery of sick benefits under the laws of Odd Fellowship.[4]

5. In holding that benefits could accumulate, and that more than three months' benefits could be recovered by an administratrix, or anybody else.[5]

6 In holding that sick benefits could be claimed and recovered by persons other than dependent relatives.[6]

7. In holding that it was not incumbent upon W. F. Caldwell, after his repeated refusal of sick benefits, to send notice to the lodge of his sickness, or desire to be again placed upon the sick list.[7]

8. In finding that the provision for an appeal to the tribunal within the order, did not apply to plaintiff.[8]

Said exceptions, after argument before the court in banc, were dismissed, without opinion filed, and the decree recommended by the master was entered; whereupon the defendants took this appeal, specifying that the court erred:

1–8. In not sustaining defendants' exceptions.[1 to 8]

*Mr. George Elphinstone,* for the appellants:

Since the act of April 28, 1876, P. L. 53, and the decision in Ash v. Guie, 97 Pa. 493, beneficial societies being no longer regarded as partnerships, a court of equity has no jurisdiction. An action at law against the officers and some of the members as representing the lodge, is the proper remedy under said act: Paul v. Keystone Lodge, 3 W. N. 408; Kurz v. Eggert, 9 W. N. 126; Commonwealth v. Volz, 14 W. N. 289; Stevick on Unincorp. Ass'ns, 392. Moreover, "all the appeals and remedies given within the order must be exhausted," before

suit can be brought in the courts : Hirschel on Benef. Soc., 49 ; Bacon on Benef. Soc., 94; Woolsley v. Odd Fellows, 61 Ia. 492 ; Niblack on Benef. Soc., 130, 356, 360 ; Black etc. Soc. v. Vandyke, 2 Wh. 313 ; Toram v. Howard Ass'n, 4 Pa. 519; Sperry's App., 116 Pa. 391; McAlees v. Order of Iron Hall, 12 Cent. R. 415. And the laws and decisions of the grand lodge, as well as the constitution and by-laws of the lodge of which he was a member, were binding on Caldwell : St. Patrick's Ben. Soc. v. McVey, 92 Pa. 510 ; MacDowell v. Ackley, 93 Pa. 277 ; and under them, as he never asked for sick benefits, but on the contrary declined to receive them, nothing can be recovered by his administratrix.

*Mr. William A. Stone* (with him *Mr. Potter*), for the appellee.
The act of April 28, 1876, P. L. 53, relieves the members of unincorporated beneficial societies from individual liability, and directs that benefits shall be payable only out of the treasuries. In order to reach the funds in the treasury, it is necessary to invoke the powers of a chancellor ; and a bill in equity is the proper remedy in such a case as this : Luders v. Volp, 8 W. N. 417. The plaintiff is not within the laws of the order respecting appeals to the grand lodge, etc., even had there been any action of the lodge to appeal from ; for, as found by the master, they apply only to members. But even a member is not bound to pursue that remedy : Mentz v. Insurance Co., 79 Pa. 478. The master did not report any findings regarding the capacity of W. F. Caldwell during the last years of his life to present any claims to the lodge ; but testimony the appellants have not printed, shows that he was incapable, both physically and mentally, of doing so. His relatives did not do so for him, and some of them testify that they were unacquainted with the laws of the order and his rights thereunder. It is not denied that he was sick so as to entitle him to benefits, and the claim of the lodge is simply that, because they withheld his benefits, they should now continue to withhold them.

OPINION, MR. CHIEF JUSTICE PAXSON :
We may throw out of this case the question of jurisdiction, and also the right of the administrator of a deceased member of an Odd Fellows lodge, to sue for benefits which had accrued

to his intestate prior to his death.   Upon the merits, the plaintiff has no case.

William F. Caldwell, whose administratrix filed this bill, became a member of the Mechanics Lodge of Odd Fellows in 1863.   He died in 1889.   In 1872, he was afflicted with paralysis, and was practically helpless the balance of his life.   His condition entitled him to sick benefits, and he received them until March, 1874, when the sum of two hundred dollars was advanced by the lodge, to establish him in a little store.   There was no evidence that he gave the lodge a formal release at that time, but it is distinctly found by the master that he never claimed his sick benefits thereafter.   He says: " William F. Caldwell never presented a claim for the benefits in question during his lifetime.   No person legally entitled to receive such benefits ever presented a claim therefor to the lodge after his death."   More than this, the master has found that both in 1885 and 1886 Mr. Caldwell was reported sick to the lodge, and, when visited by the members of the relief committee, he declared to them that he was not a beneficiary of the lodge, and requested them to discontinue their visits.   When he died in 1889, the usual funeral benefits were paid to his family, from which fact the master argues that the obligation of the lodge still continued, to pay the sick benefits.   It is true, by the laws of the order funeral benefits are payable only to such members as are entitled to weekly benefits, but it does not follow that, because a member is entitled to weekly benefits, any such benefits are due to him.   The learned master says : " After November 13, 1886, I find no evidence that W. F. Caldwell ever declined to receive benefits, or made any declaration that he was not a beneficiary, or that he did not desire the relief committee to visit him."   Upon this state of facts, the master constructs a theory that from 1886 to his death in 1889, Mr. Caldwell was entitled to benefits ; yet his condition had not changed in any respect from what it had been in 1874, when his store was started with the help of the lodge, since which time he had neither received nor claimed benefits down to 1885 and 1886, when he expressly declined to receive them.

After Caldwell's death, his administratrix filed this bill, claiming the sum of $4,722, as weekly benefits from 1874. The master and the court below entered a decree in her favor

for $774, with interest from May 7, 1889. From this decree the defendants appealed. To reach this conclusion the master has wholly ignored the constitution and by-laws of the lodge, and the laws of the order of which Caldwell was a member. That they were binding upon him while living, is so plain that I need not stop to cite authority. That they were binding upon his administratrix and his family after his death, is equally clear. It is provided by article IV., § 4, of the constitution of the order, that " benefits shall not be allowed to members residing within visiting limits of the lodge, until after they have been reported sick or disabled, to the lodge or to the relief committee." Section 175, Pennsylvania Digest of the Laws of the United Order of Odd Fellows, provides: " A brother who, when sick or disabled, neglects or refuses to make application for benefits, as required by the by-laws of his lodge, unless prevented by unavoidable circumstances, forfeits his claim thereto." This is sufficient. The proposition that a sick member of a lodge, who is visited by the relief committee, and declines to be reported as sick, and further declares he is not entitled to benefits, may, years afterward, without any change in his condition, recover arrearages of weekly benefits for all that time, cannot be sustained. Much less, when he has made no such claim, can his representatives do so after his death.

The decree is reversed, and the bill dismissed at the costs of the appellee.